FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 14, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JERAMIE M.,[1]

Plaintiff,

v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

Defendant.

No.    4:21-cv-5138-EFS

**ORDER RULING ON CROSS
SUMMARY-JUDGMENT MOTIONS,
AND REMANDING FOR FURTHER
PROCEEDINGS**

Plaintiff Jeramie M. appeals the denial of benefits by the Administrative Law Judge (ALJ). Because the ALJ failed to provide adequate reasons supported by substantial evidence for discounting medical opinions and Plaintiff's symptom reports, this matter is remanded for further proceedings.

//

/

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

1

## I.    Five-Step Disability Determination

2      A five-step evaluation determines whether an adult claimant is disabled.[2]

3   Step one assesses whether the claimant is engaged in substantial gainful activity.[3]

4   If the claimant is engaged in substantial gainful activity, benefits are denied.[4] If

5   not, the disability evaluation proceeds to step two.[5]

6      Step two assesses whether the claimant has a medically severe impairment

7   or combination of impairments that significantly limit the claimant's physical or

8   mental ability to do basic work activities.[6] If the claimant does not, benefits are

9   denied.[7] If the claimant does, the disability evaluation proceeds to step three.[8]

10      Step three compares the claimant's impairment or combination of

11   impairments to several recognized by the Commissioner as so severe as to preclude

12   substantial gainful activity.[9] If an impairment or combination of impairments

13

14

---

15

16   [2] 20 C.F.R. § 404.1520(a).

17   [3] *Id.* § 404.1520(a)(4)(i).

18   [4] *Id.* § 404.1520(b).

19   [5] *Id.*

20   [6] *Id.* § 404.1520(a)(4)(ii).

21   [7] *Id.* § 404.1520(c).

22   [8] *Id.*

23   [9] *Id.* § 404.1520(a)(4)(iii).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[10] If not, the disability evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[11] If the claimant can perform past work, benefits are denied.[12] If not, the disability evaluation proceeds to step five.

Step five assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[13] If so, benefits are denied. If not, benefits are granted.[14]

The claimant has the initial burden of establishing she is entitled to disability benefits under steps one through four.[15] At step five, the burden shifts to the Commissioner to show the claimant is not entitled to benefits.[16] If there is

---

[10] 20 C.F.R. § 404.1520(d).

[11] *Id.* § 404.1520(a)(4)(iv).

[12] *Id.*

[13] *Id.* § 404.1520(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497–98 (9th Cir. 1984).

[14] 20 C.F.R. § 404.1520(g).

[15] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[16] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

medical evidence of drug or alcohol addiction, the ALJ must then determine whether drug or alcohol use is a material factor contributing to the disability.[17]

## II.    Background

Plaintiff filed a Title 2 application alleging disability based on mental-health impairments beginning May 1, 2016.[18] Her claim was denied initially and on reconsideration.[19] On request, ALJ Marie Palachuk conducted an administrative hearing by telephone and took testimony from Plaintiff about her conditions and symptoms.[20]

After the hearing, the ALJ issued a decision denying Plaintiff's disability application, finding:

- Plaintiff met the insured status requirements through March 31, 2023.

- Step one: Plaintiff had not engaged in substantial gainful activity since May 1, 2016, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: major depressive disorder, bipolar disorder, generalized

---

[17] 20 C.F.R. § 404.1535(a); *Parra*, 481 F.3d at 748.

[18] AR 173–74, 378–80.

[19] AR 91–94, 96–99.

[20] AR 31–63.

anxiety disorder, intermittent explosive personality disorder, posttraumatic stress disorder, and alcohol use disorder.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels with the following non-exertional work limitations:

  > routine tasks in a predictable work environment with seldom changes and there should be no fast paced production rate of pace. She is able to make simple work related judgments and interaction with coworkers, supervisors, and the public should be brief, occasional and superficial (defined as non-collaborative/no teamwork).

- Step four: Plaintiff was unable to perform past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as cleaner II, cook helper, and store laborer.

- Plaintiff's substance use disorder was not material to her alleged disability.[21]

In reaching her decision, the ALJ found the reviewing mental-health opinions of Michael Lace, Psy.D., Jon Anderson, Ph.D., and Carol Moore, Ph.D.,

---

[21] AR 12–28.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

persuasive, and the treating opinion of Kishore Varada, PA-C, unpersuasive.[22] The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were inconsistent with the medical evidence and other evidence.[23]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[24] Plaintiff timely appealed to the Court.

## III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[25] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[26] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[27] Moreover, because it is the role of the ALJ—and not the Court—to weigh conflicting evidence, the Court

---

[22] AR 21–23.

[23] AR 20–21.

[24] AR 1–6.

[25] 42 U.S.C. § 405(g).

[26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[27] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

1     upholds the ALJ's findings "if they are supported by inferences reasonably drawn

2     from the record."[28] The Court considers the entire record.[29]

3         Further, the Court may not reverse an ALJ decision due to a harmless

4     error.[30] An error is harmless "where it is inconsequential to the ultimate

5     nondisability determination."[31]

6 **IV.    Analysis**

7 **A.    Medical Opinions: Plaintiff establishes consequential error.**

8         Plaintiff argues the ALJ erred by mischaracterizing Plaintiff's mental-status

9     examinations as normal and therefore discounting PA-C Varada's treating opinion

10     while finding the reviewing opinion of Dr. Lace persuasive. As explained below, the

11     ALJ so erred.

---

[28] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[29] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[30] *Molina*, 674 F.3d at 1111.

[31] *Id.* at 1115 (cleaned up).

1

### 1.    Standard

2

An ALJ must consider and evaluate the persuasiveness of all medical

3

opinions.[32] The factors for evaluating the persuasiveness of medical opinions

4

include, but are not limited to, supportability, consistency, relationship with the

5

claimant, and specialization.[33] Supportability and consistency are the most

6

important factors, and the ALJ is required to explain how both factors were

7

considered.[34]

8

### 2.    Dr. Lace

9

Dr. Lace reviewed the medical record and testified that Plaintiff did not

10

meet or equal a listing or satisfy the C Criteria.[35] As to the B Criteria, Dr. Lace

11

opined that Plaintiff was mildly limited in understanding, remembering, or

12

applying information, moderately limited with interacting with others and

13

adapting or managing herself, and mildly-to-moderately limited concentrating,

14

persisting, or maintaining pace.[36] Dr. Lace recommended that Plaintiff be assigned

15

routine tasks, have a work setting with few, if any, changes in the nature of the

16

tasks throughout the day, no fast-paced production work, and brief and superficial

17

_____

18

[32] 20 C.F.R. § 404.1520c(a), (b).

19

[33] *Id.* § 404.1520c(c)(1)–(5).

20

[34] *Id.* § 404.1520c(b)(2).

21

[35] AR 37.

22

[36] AR 37–38.

23

contact with the public, coworkers, and supervisors.[37] Dr. Lace highlighted that Plaintiff's PHQ-9 and GAD-7 scores indicated mild to mild-to-moderate symptoms and were inconsistent with PA-C Varada's marked limitations.[38] And although Dr. Lace acknowledged that Plaintiff's symptoms wax and wane, Dr. Lace opined that Plaintiff's symptoms remain within normal limits even when her symptoms wax.[39]

The ALJ found Dr. Lace's reviewing testimony persuasive on the grounds that it was consistent with the record and he was familiar with the Social Security disability evaluation criteria.[40] Whether an opinion is consistent with the evidence from other medical sources and nonmedical sources and the medical source's familiarity with the Social Security disability evaluation criteria are factors for the ALJ to consider.[41]

As discussed by Dr. Lace, and as highlighted by the ALJ, Plaintiff's treatment records routinely reflect intact insight/judgment, memory, attention,

---

[37] AR 37–38.

[38] AR 36–37.

[39] AR 38–39.

[40] AR 22.

[41] 20 C.F.R. § 404.1520c(c)(1); *see Lingenfelter*, 504 F.3d at 1042 (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole).

1    fund of knowledge, behavior, and appearance.[42] But the treatment records also

2    reflect that Plaintiff routinely had obsessions/compulsions, rapid/pressured speech,

3    and/or racing thoughts—either goal directed or tangential—and at times was

4    hostile/aggressive and angry.[43] For instance, in April 2019, Plaintiff was

5    hypomanic, anxious, irritable, hostile/aggressive, paranoid/suspicious, angry, and

6    had labile mood swings.[44] Improvement was noted at Plaintiff's May 2019

7    appointment, although she still had anxious mood swings, and by July 2019, she

8    had less anger.[45] In April through September 2020, Plaintiff was observed with

9    tangential racing thoughts, irritable mood swings, and anxiety.[46]

10        Consistent with the waxing and waning of irritability, anxiety, and anger,

11    Plaintiff's PHQ-9, GAD-7, and BAD (bipolar affective disorder) scores fluctuated.

12    As Dr. Lace mentioned, Plaintiff's PHQ-9 and GAD-7 scores fluctuated from mild to

13    moderate. Yet, Plaintiff's BAD scores fluctuated as well, indicating that Plaintiff's

---

[42] The ALJ stated Plaintiff "was repeatedly found to be without any significant symptoms and to repeatedly have mental status examinations within normal limits." AR 22. *See, e.g.*, AR 398, 402, 418, 422, 428, 432, 444, 448, 480, 487, 512.

[43] *See, e.g.*, AR 398, 402, 418, 422, 432, 444, 448, 465, 480, 487, 512.

[44] AR 401–04.

[45] AR 397–99, 511–14.

[46] AR 465–97.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 10

bipolar symptoms—in addition to her anxiety and depression symptoms—also waxed and waned.[47] Based on Plaintiff's BAD scores noted on PA-C Varada's monthly treatment notes, Plaintiff often satisfied the criteria of having elation or irritability and at least one associated manic symptom for a distinct period and sometimes satisfied the criteria of having elation or irritability and at least three associated manic symptoms for at least one day.[48] Yet, the BAD scores were not discussed by Dr. Lace or by the ALJ. By not discussing the impact and severity of

---

[47] *See Attmore v. Colvin*, 827 F.3d 872, 878 (9th Cir. 2016) ("It is the nature of bipolar disorder that symptoms wax and wane over time."); *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

[48] *See* Nick Craddock, et al., *The Bipolar Affective Disorder Dimension Scale—a dimensional scale for rating lifetime psychopathology in Bipolar spectrum disorders*, BMC Psychiatry (2004), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC481074/.

Plaintiff's waxing/waning bipolar symptoms, the ALJ's analysis of Dr. Lace's opinion is not supported by substantial evidence.[49]

This error was consequential, as the vocational expert testified that an individual who is not on task 15% or more during the day, is absent more than 1 day a month on an ongoing basis, is unable to respond appropriately to criticism from supervisors more than 33% of the time, or engages in disruptive outbursts toward coworkers or supervisors at work more than 3–4 times a month on a persistent basis would be unable to sustain competitive employment.[50]

3.    PA-C Varada

After Plaintiff moved to Washington from California in the fall of 2018, PA-C Varada treated Plaintiff monthly for bipolar disorder, depression, and anxiety. In October 2020, PA-C Varada completed a Mental Residual Functional

---

[49] *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (emphasizing that treatment records must be viewed considering the overall diagnostic record); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (disallowing the ALJ from cherry picking evidence to support a conclusion that contradicts the overall diagnostic record); *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the court to meaningfully review the ALJ's finding).

[50] AR 58–61.

Capacity Assessment.[51] PA-C Varada assessed marked limitations for all mental activities, except moderate limitations as to Plaintiff's ability to remember locations and work-like procedures, ability to understand and remember very short and simple instructions, ability to carry out very short simple instructions, ability to make simple work-related decisions, and ability to ask simple questions or request assistance.[52] As to the B Criteria, PA-C Varada opined marked limitations for the four criteria.[53] PA-C Varada also opined that Plaintiff would decompensate with even a minimal increase in mental demands or change in the environment, that she would be off-task and unproductive over 30% of the workweek, and that she would miss 4 or more days of work per month.[54]

The ALJ found PA-C Varada's opinion was not persuasive because, as Dr. Lace testified to, PA-C Varada's opinion was not supported by the treatment record, which showed that Plaintiff "was repeatedly found to be without any significant symptomatology and to repeatedly have mental status examinations within normal limits."[55]

---

[51] AR 515–18.

[52] AR 515–16.

[53] AR 517.

[54] AR 517–18.

[55] AR 22–23.

1  Because the ALJ's evaluation of PA-C Varada's opinion was based largely on

2  Dr. Lace's evaluation of the record, and because the ALJ failed to meaningfully

3  discuss whether Dr. Lace adequately considered the fluctuating nature of

4  Plaintiff's bipolar symptoms observed by PA-C Varada and the extent of Plaintiff's

5  symptoms when they waxed, the ALJ on remand is to reassess PA-C Varada's

6  opinion.

7  **B.    Symptom Reports: Plaintiff establishes consequential error.**

8  Because the ALJ did not find Plaintiff was malingering, the ALJ was

9  required to provide specific, clear, and convincing reasons supported by substantial

10  evidence for rejecting Plaintiff's symptom reports after considering the relevant

11  factors.[56] The ALJ failed to do so.

12  As to Plaintiff's symptom reports, Plaintiff testified that she stopped

13  working in the pension-administration field because she could not focus or

14  concentrate on a task until completion, and she was short tempered and would

15  argue with her boss and coworkers.[57] Since then, she tried other jobs but did not

16  stay long in these jobs, as she was easily distracted, got emotional, and had panic

17  attacks.[58] She volunteers at the food bank two days a week for 1 1/2 −2 hours. She

18  

19  ────────────────

[56] *See* 20 C.F.R. § 416.929(c); Soc. Sec. Rlg. (SSR) 16-3p, 2016 WL 1119029, at *7;

20  *Ghanim*, 763 F.3d at 1163 (quoting *Lingenfelter*, 504 F.3d at 1036).

21  [57] AR 40–41.

22  [58] AR 43–44.

23

has missed some days volunteering—or has left early—when her bipolar symptoms wax, including getting irritable at the other volunteers.[59]

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her medically determinable impairments inconsistent with the "medical evidence and other evidence in the record."[60] The ALJ supported her finding with a summary of Plaintiff's hearing testimony and of the mental-health treatment records, including highlighting some of Plaintiff's reports of improvement with medication to her treating providers.[61]

While an ALJ may discount symptom reports that are inconsistent with prior statements, improvement with medication, or other parts of the record, when relying on such reasons to discount a claimant's symptom reports, the ALJ must fully account for the context of the prior statements or improvement, as well as the nature of the impairment and its symptoms.[62] Moreover, an ALJ may not "discredit the claimant's testimony as to the severity of symptoms merely because they are

---

[59] AR 47–50.

[60] AR 20.

[61] AR 20–21.

[62] *See Reddick v. Chater*, 157 F.3d 715, 723 (9th Cir. 1998).

1    unsupported by objective medical evidence."[63] And the Court is limited to

2    addressing the reasons articulated by the ALJ for discounting Plaintiff's symptom

3    reports.[64]

4         Here, the only specific and clear reason the ALJ offered for rejecting

5    Plaintiff's symptom reports was that Plaintiff's symptoms were inconsistent with

6    the objective medical evidence, which was interpreted as showing mild to moderate

7    mental-health symptoms. Instead of offering additional specific and clear reasons

8    for discounting Plaintiff's symptom reports, the ALJ merely mentions in her

9    summary of the medical history some occasions when Plaintiff reported that her

10   medication was working and that she was doing well. The ALJ must do more than

11   mention Plaintiff's reports of mild symptoms or improvement with treatment—the

12   ALJ must specifically and clearly state that the ALJ is discounting Plaintiff's

13   symptom reports because of these inconsistent symptom reports and/or

14   improvement with treatment. Then, the ALJ must support the specific and clear

15   reason with such substantial evidence that the reason serves as a convincing

16   reason to discount Plaintiff's reported symptoms. Moreover, the ALJ must explain

17

18   ───────────────────────

19   [63] *Id.* at 722; *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (requiring the

     ALJ to consider whether the claimant's conflicting symptom reports were caused

20   by the claimant's impairments).

21   [64] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court

22   review is constrained to the reasons the ALJ asserts).

23

1  why the mentioned discrepancies in symptom severity were not an intermittent

2  waning of Plaintiff's reported more-serious symptoms.[65]

3      The ALJ also mentioned that Plaintiff's "complaints and alleged

4  symptomatology were quite focused and involved social functioning/interactions"

5  and, therefore, her social limitations were adequately addressed by the RFC, which

6  limits her to routine tasks in a predictable work environment and with brief and

7  superficial interaction with others.[66] The ALJ fails to bridge the analytical gap

8  between the fact that Plaintiff's symptoms limited her socially and that the RFC as

9  crafted adequately addressed Plaintiff's symptoms.[67] On remand, if the ALJ

10  discounts Plaintiff's symptom testimony, the ALJ must specifically, clearly, and

11  convincingly explain how Plaintiff's social limitations are adequately addressed by

12  the crafted RFC. The ALJ is to do this by clearly identifying what symptom

13

14

15

---

16  [65] *See* 20 C.F.R. § 404.1520a(c); *see also* SSR 18-3p.

17  [66] AR 20.

18  [67] *Rounds v. Comm'r Soc. Sec.* Admin, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he

19  ALJ is responsible for translating and incorporating clinical findings into a succinct

20  RFC."); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ

21  to build an accurate and logical bridge from the evidence to her conclusions so that

22  we may afford the claimant meaningful review of the SSA's ultimate findings.").

23

testimony is being rejected and why and then cite to specific evidence supporting the findings.[68]

## C.    Other Steps: The ALJ must reevaluate.

Because the ALJ did not meaningfully discuss the extent and impact of Plaintiff's waxing/waning bipolar symptoms when analyzing the medical evidence and Plaintiff's symptom reports, the ALJ's listings and RFC analysis were consequentially impacted. On remand, the ALJ must more meaningfully discuss Plaintiff's waxing/waning bipolar symptoms in the sequential disability evaluation.

In addition, on remand, the ALJ is take any further action needed to complete the administrative record, including affording Plaintiff the opportunity to submit a statement from a supervisor or co-volunteer at the food bank.[69] The ALJ is to reconsider the opinion evidence and Plaintiff's symptom reports, and reevaluate the sequential evaluation, obtaining testimony from a medical expert to address Plaintiff's bipolar symptoms, if necessary.[70]

---

[68] *See Ghanim*, 763 F.3d at 1163.

[69] *See* 20 C.F.R. § 404.1512(b); *Hearings, Appeals, and Litigation Law Manual* I-2-5-62.

[70] *See Leon v. Berryhill*, 800 F.3d 1041, 1045 (9th Cir. 2017); *Garrison*, 759 F.3d at 1020.

## V.    Conclusion

The ALJ's failure to consider the waxing/waning nature of Plaintiff's bipolar disorder and what impact such waxing/waning symptoms have on Plaintiff's ability to sustain work requires remand for further proceedings.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff.

4.    This matter is **REVERSED and REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

5.    The case shall be **CLOSED**.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 14th day of October 2022.

*Edward F. Shea*
_____
EDWARD F. SHEA
Senior United States District Judge